MAYOR, ETC., OF THE CITY OF KNOXVILLE *v.* KNOXVILLE & O. R. Co.

*(Circuit Court, E. D. Tennessee. December, 1884.)*

1. CORPORATIONS—ULTRA VIRES.
    The powers of a corporation are only such as are conferred by law. Everything done by a corporation in excess of such authority is voidable at the instance of the parties interested in and injuriously affected thereby.

2. SAME—CHARTER A CONTRACT—LEGISLATURE CANNOT IMPAIR—TRANSFER OF FRANCHISE.
    Where the charter of a railroad corporation did not authorize the transfer of its franchise and other property to another corporation, upon the assumption by the latter of all the duties and obligations of the former, and upon issuing to the stockholders of the former an equal amount of the stock of the latter corporation, *held,* that it was not competent for the legislature, by authorizing such transfer, to do more than to waive the rights of the public. It could not divest or impair the rights of the stockholders as between themselves, as guarantied by the company's charter, without their consent.

3. SAME—VOIDABLE CONVEYANCES—LACHES.
    In this case there has been no such laches as to preclude the assertion of the dissenting stockholders.

4. SAME—ULTRA VIRES CONVEYANCES—SUBSEQUENT MORTGAGE—INNOCENT BONDHOLDERS.
    Where a corporation unauthorizedly made a conveyance of its property, and the transferee subsequently mortgaged the same to secure certain bonds which were sold for value without actual notice of the defect in the title, *held,* that they are charged with notice of such defect, it being apparent upon the face of the first conveyance; and the first conveyance being set aside, the mortgage will be removed as a cloud upon the title. But in this case an account is ordered between the parties to said conveyance, and the transferee will be entitled to a lien for any balance found due, and to a sale of the property, the proceeds to be

subject to such disposition in favor of the trustee under the mortgage as the court may think equitable.

5. SAME—SUBSTITUTION OF STOCKHOLDERS.

The transferee under the conveyance thus avoided, having issued its own stock in place of some of the stock of the grantor surrendered as stipulated in the conveyance, it is entitled to be substituted to the rights of the surrendering stockholders.

In Equity.

*Luckey & Yoe,* for mayor and aldermen of Knoxville.

*Henderson & Jourolman,* for Knoxville & O. R. Co.

*Wm. M. Baxter,* for East Tennessee, V. & G. R. Co.

*Andrews & Thornburgh,* for Central Trust Company of New York.

BAXTER, J.    The Knoxville & Kentucky Railroad Company, organized in 1855, was created to build a railroad from Knoxville to the Kentucky line, in the direction of Louisville and Cincinnati. The city of Knoxville subscribed $100,000 to its capital stock. After constructing 38 miles of road, the company became insolvent and unable to complete its undertaking. Thereupon the state, to which it was largely indebted for bonds loaned it under and pursuant to the internal improvement act of February 11, 1852, and acts amendatory thereof, instituted a suit in the chancery court for Davidson county, to foreclose the statutory lien reserved on said company's road and other property, for the state's indemnity; and under decrees rendered therein the same were sold to W. B. Johnson and associates for $350,000. In virtue of this purchase the purchasers became entitled, under section 1507a, par. 21, T. & S. Code, to apply to the chancery court of either of the counties through which said railroad ran, to be substituted to all the rights, privileges, and immunities, and subjected to all the liabilities of the acts of incorporation under which said Knoxville & Kentucky Railroad Company was organized, and the acts amendatory thereof, and to such change of name as they might desire; and it was by said act made the duty of the chancellor, upon the production of satisfactory evidence, to declare the purchasers "a corporation," and "fully clothe them with the powers, privileges, and immunities" conferred by said original charter and amendments thereto. The purchasers accordingly made an application in conformity with the requirements of said act, and were, pursuant thereto, duly declared a body, politic and corporate, by the name of the Knoxville & Ohio Railroad Company, and invested with all the powers, rights, privileges, and immunities theretofore conferred on the Knoxville & Kentucky Railroad Company.

The legal effect of the foregoing proceedings was to foreclose the state's lien on the road, franchises, and property of the Knoxville & Kentucky Railroad Company, and extinguish all the interest which the stockholders therein had in said corporation, and vest the same in the Knoxville & Ohio Railroad Company. But, in the organization of said last-named company, the purchasers (after incumbering their road, franchises, and other property with a mortgage to secure the

payment of $500,000 of 7 per cent. bonds issued by said company) fixed the capital stock at something over $1,100,000, of which they retained two-thirds, and gratuitously distributed the balance among the stockholders of the old company, giving $100,000 thereof to the city of Knoxville.

The organization of the Knoxville & Ohio Railroad Company occurred in 1871. Upon its organization the company took possession of and operated its road until July 1, 1881, applying its earnings to the payment of interest on its bonded debt, to the repairing and betterment of its property, and to the acquisition of necessary equipment. During this interval, and shortly before the sale complained of herein, the Knoxville & Ohio Railroad Company entered into an agreement with the East Tennessee, Virginia & Georgia Railroad Company, whereby the latter company undertook to advance to the former company enough money to extend said last company's road from its northern terminus at Caryville to the Kentucky line. Under this contract it advanced between twelve and fifteen hundred thousand dollars, no part of which has been repaid. The extension was made, thereby securing a valuable connection with the Louisville & Nashville system at Jellico, and opening up a new and important railroad line through a rich and extensive country not previously penetrated by any railroad. The Knoxville & Ohio Railroad Company, being unable to repay the money, so as aforesaid advanced to it by the East Tennessee, Virginia & Georgia Railroad Company, did, on the eighth of July, 1881, pursuant to a resolution adopted by a large majority of its stockholders in a meeting duly called for that purpose, make and deliver its deed conveying its road, franchises, and *all* other property to the East Tennessee, Virginia & Georgia Railroad Company; and, in consideration thereof, said last-named company undertook and agreed to pay all the liabilities of the vending company, including the advances aforesaid, and issue to its stockholders of the "common stock" of the East Tennessee, Virginia & Georgia Railroad Company an amount, at its face value, equal to the stock, respectively, owned by them in the Knoxville & Ohio Railroad Company. The stock owned by the city of Knoxville in the Knoxville & Ohio Railroad Company was not represented in the stockholders' meeting that authorized the sale complained of; nor has the city since either ratified or dissented from said sale, until the commencement of this suit. Immediately after the conveyance of said road, franchises, and property, by the Knoxville & Ohio Railroad Company, as aforesaid, to the East Tennessee, Virginia & Georgia Railroad Company, the latter company, by two separate conveyances, mortgaged its entire property (including that conveyed to it by the Knoxville & Ohio Railroad Company) to the Central Trust Company of New York to secure the payment of a large number of first mortgage and certain income bonds, which it had issued and sold for value to *bona fide* purchasers. These mortgages were, a few days after their execution, duly probated and registered in each of the several states pen-

etrated by the East Tennessee, Virginia & Georgia Railroad Company's roads, upon the faith of which the bonds secured thereby were negotiated.

Following all this, on the twenty-third of June, 1883, the mayor and aldermen of Knoxville filed a bill, for and in behalf of said city and all other stockholders of the Knoxville & Ohio Railroad Company having a common interest with the city in the litigation, in the chancery court, Knox county, Tennessee, against the Knoxville & Ohio and the East Tennessee, Virginia & Georgia Railroad Companies and the Central Trust Company of New York, praying for a decree annulling the conveyance made by the Knoxville & Ohio Railroad Company to the East Tennessee, Virginia & Georgia Railroad Company, and declaring the mortgages made by said last-named company to the Central Trust Company of New York, hereinbefore mentioned, a cloud upon the title of the Knoxville & Ohio Railroad Company's property embraced therein, and removing the same. It was therein alleged that the complainant, the city of Knoxville, owned, in its corporate capacity, $100,000 of the capital stock of the Knoxville & Ohio Railroad Company; that the conveyance sought to be annulled was made without its consent and in fraud of its rights. This was the general ground upon which the prayer for relief was predicated, and, among other specific charges in support of that general allegation, the complainant averred that the East Tennessee, Virginia & Georgia Railroad Company had acquired the ownership of a majority of the capital stock of the Knoxville & Ohio Railroad Company, through and by means of which it controlled said company and secured the passage of the resolution authorizing the conveyance to itself of the road, franchises, and property of the Knoxville & Ohio Railroad Company. But it contained no allegation that it had made any effort to induce the Knoxville & Ohio Railroad Company to institute and prosecute a suit, or take any other action, for the redress of the wrong complained of in the bill.

The Knoxville & Ohio Railroad Company answered, denying the alleged fraud, but substantially admitting all the other charges of the bill. It then averred that it had not been requested by complainant, or any other person in its behalf, to take any step to "set aside the deed of July 8, 1881," and declared that no complaint had been made by any one thereof, and avowed its willingness, if the complainant desired it to do so, to institute and prosecute a suit for the relief prayed for by the complainant; and thereupon made its answer (as under the state practice it had the right to do) a crossbill, and therein substantially reiterated all the allegations contained in the complainant's bill, and confessed by its answer, and prayed for the same relief demanded in the complainant's original bill. The East Tennessee, Virginia, & Georgia Railroad Company also answered and denied the alleged fraud, but admitted all the other material facts, and added that it would "make no controversy touching said

conveyance," and consented to a decree setting the same aside, provided an equitable adjustment of the accounts between it and the Knoxville & Ohio Railroad Company is decreed and appropriately enforced. The Central Trust Company of New York entered its appearance, and demurred to the complainant's bill, on the ground that complainant had not brought the case within the requirements of the ninety-fourth rule—recently promulgated by the supreme court —to-wit, that complainant had not averred any request, or shown other effort, to induce the Knoxville & Ohio Railroad Company to take steps to redress the wrong alleged to have been done to said corporation,—of which the city was a stockholder,—and of which it complained. But before any action was had upon this demurrer, the suit was, upon the application of said trust company, removed to this court. The demurrer was here considered and sustained, and, the complainant admitting that it could not amend so as to bring its case within the purview of the rule, a decree was passed, dismissing its bill. From this it will be seen that the controversy left rests upon the cross-bill of the Knoxville & Ohio Railroad Company, and the answers thereto of the East Tennessee, Virginia, & Georgia Railroad and the Central Trust Companies, and the evidence adduced by the parties in support of their respective positions.

In behalf of the Central Trust Company it is contended (1) that the deed of July 8, 1881, vested the East Tennessee, Virginia & Georgia Railroad Company with a good title to the property it purports to convey; or (2) if it does not vest such title, the complainant, by its acquiescence, is estopped from denying the fact; and (3) that the *cestuis que trust* represented by the complainant are innocent holders, for value, of the bonds secured by the mortgages in question, and that their equities are superior to those of the dissenting stockholders, for whose benefit this suit is being prosecuted.

The determination of these questions necessitates an inquiry into the powers of the Knoxville & Ohio Railroad Company. Was it legally endowed with power to make said conveyance? The powers of corporations are only such as are conferred by law. Everything done by a corporation in excess of such authority is voidable at the instance of the parties interested in and injuriously affected thereby. The powers of the complainant corporation are prescribed by the original and amendatory acts which constitute the Knoxville & Kentucky Railroad Company's charter. These contain the contract (1) between the state and said corporation, and (2) between the stockholders therein. Under their provisions the complainant was authorized to complete, and impliedly charged with the duty of operating, its road. But there is no provision of any one of these acts which, by implication or otherwise, authorized it to transfer its immunities and obligations, as by its conveyance it assumed to do, to the East Tennessee, Virginia & Georgia Railroad Company; and this is one ground upon which it is insisted, in complainant's behalf, that nothing passed under said deed.

We concede that no such divestiture of title and transfer of the obligation to complete and operate a railroad could have been made without legislative permission; but such permission, we think, was given by the acts of November 9 and December 11, 1871, (see pages 21 and 59 of the acts of that session,) which authorizes any railroad company in Tennessee to purchase any railroad in the state. The authority thus given to any railroad company to buy necessarily implies authority to other companies to sell, inasmuch as there could be no purchase without a corresponding sale. But it was not competent for the legislature to do more in this respect than to waive the public rights. It could not divest or impair the rights of the shareholders, as between themselves, as guarantied by the company's charter, without their consent. It was upon the faith of the stipulations contained in said charter that the shareholders subscribed to the capital stock, and thereby made themselves members of the corporation. These stipulations, as we have already seen, contemplated and provided for the construction of a railroad between the *termini* named, to be governed by the shareholders, in the manner and upon the terms prescribed. Each corporator is entitled to have the contract fairly interpreted and honestly enforced. The charter invests the owners of a majority of the capital stock with the right to control the corporate business within the scope of its provisions. Within this limit the power of a majority, when acting in good faith, is supreme. But complainant's charter does not, by any reasonable intendment, clothe the majority with authority to sell the company's franchise and property, and in this way coerce the minority and protesting shareholders into another and different corporation, owning and operating another and different railroad, under another and different charter, imposing other and different obligations, and governed by a different set of corporators. To so hold would be to divest them of their vested rights and force them into a relation, and subject them to duties and obligations, which they have not, and probably, would not, have voluntarily assumed.

The sale, therefore, made by the complainant company to the defendant the East Tennessee, Virginia & Georgia Railroad Company, was without authority, and is, consequently, voidable, unless the right to avoid it has been lost by the laches of the dissenting shareholders, or defeated by the alleged superior equities of the holders of the bonds secured by the mortgages which the complainant seeks to have declared a cloud upon its title, and removed therefrom. There has, we think, been no such laches as will preclude the complainant from asserting the rights of its dissenting stockholders; nor do we think that its rights have been defeated by the mortgages made to the Central Trust Company.

The principle upon which this last contention is predicated is a familiar one, which has been clearly defined by numerous adjudications. A party who has paid a fair consideration for a piece of prop-

erty or thing of value, and taken a conveyance to himself of the legal title thereof without negligence or fault on his part, or notice of an outstanding equitable title in some one else, will be protected in his legal estate against such outstanding equity. Now, we do not doubt but that the holders of the bonds in question are, in a restricted sense, innocent holders; that is to say, there is every reason to believe that they acquired their respective holdings in the belief—if, in fact, they had at that time ever heard of the matter—that the deed impugned by the complainant's bill was a valid conveyance, and vested the bargainer with a good title to the franchise and property described therein; but the defect in said deed arises from a want of power in the vending corporation to make it. This defect is apparent on the face of the deed, of which all persons claiming under it were, in law and equity, bound to take cognizance; and if, from negligence or any other cause, they have failed to do this, the court is bound to deal with them as if they had had actual notice of all the facts. In view of this principle, they are not innocent holders, and the facts relied on by their trustee is no sufficient obstacle to the relief prayed for. A decree will therefore be entered, rescinding said sale, and removing said mortgages, as clouds upon the complainant's title. But the complainant and the defendant the East Tennessee, Virginia & Georgia Railroad Company will be required to account with each other; the former, for all the advances of money made by the latter in extending, improving, repairing, maintaining, equipping, or operating its road, and for other purposes, and also for all debts or obligations assumed, paid, or taken up for it by said last-named company, including said 7 per cent. first mortgage bonds and unpaid coupons, with interest thereon; and the defendant the East Tennessee, Virginia & Georgia Railroad Company will be charged with all payments made by the complainant, if any have been made, and with the earnings of the Knoxville & Ohio Railroad Company, since the first day of July, 1881, (the date at which it took possession and began to operate said road,) and with the value of any and all personal property belonging to complainant, which it may have appropriated to its own use, less the value of such property, if any, as it has or may return to the complainant.

And the parties may adjust the accounts aforesaid between themselves, provided they do so without unreasonable delay; but they will be required to submit the same to A. R. Humes, who is appointed a special master for that purpose, for the inspection and revision by him, (if he shall deem a revision thereof necessary,) and for the approval of this court. But if the parties shall fail to promptly adjust their accounts, as herein provided and required, the said Humes shall, as special master, proceed to hear proof and report upon the same to the next regular term of this court. If there shall be found a balance due the East Tennessee, Virginia & Georgia Railroad Company, as now seems probable, it will be entitled to a decree therefor against the

complainant, and to a lien—to be hereafter defined—upon the complainant's property to secure the payment thereof, and to such a sale of complainant's property as may be hereafter ordered; and the same, when collected, shall be paid into this court, subject to such disposition thereof in favor of the defendant the Central Trust Company of New York as the equities of the case shall, in the judgment of this court, hereafter require; or, if the parties in interest agree, the complainant may issue its bonds for an amount sufficient to pay off and discharge the amount that may be found due the East Tennessee, Virginia & Georgia Railroad Company, upon the accounting hereinbefore ordered, or for such amount as may be agreed on between them, and execute a mortgage securing the same. But all agreements made by said parties, touching the foregoing matters, shall be filed with the special master aforesaid, for the inspection and approval of the court, and for such further action in regard thereto as may then appear to be just and equitable; the object being, so far as it is practicable, to secure to the beneficiaries of said mortgages a lien upon the money or bonds that may be realized by the East Tennessee, Virginia & Georgia Railroad Company from the complainant, in lieu of the mortgages herein declared invalid and ordered removed as a cloud upon complainant's title. And as it appears that some of the stockholders in the complainant corporation have surrendered their stock therein, and accepted, in lieu thereof, stock in the East Tennessee, Virginia & Georgia Railroad Company, said last-named company is, in the opinion of the court, entitled to be substituted to their rights in the complainant company; and the decree will provide for such substitution of said defendants to the rights of said surrendering stockholders.

All other matters will be reserved for future consideration.